### STACK *vs.* O'HARA.

*(Court of Common Pleas No. 4 of Philadelphia.* April 3, 1886.)

BISHOP AND PRIESTS. ROMAN CATHOLIC CHURCH. DISCRETION OF BISHOP. REFUSAL TO ASSIGN. An action will not lie by a Priest of the Roman Catholic Church against his Bishop for refusing to assign him to a charge, the duty of assignment being exercisable by the Bishop in accordance with his discretion, and his liability for his performance or non-performance being solely *in foro conscientiæ.*

DEMURRER.

The *narr.* set out that the plaintiff was a priest and the defendant a bishop of an unincorporated association of persons known as the Roman Catholic Church; that it was the exclusive duty of the defendant, as bishop, to assign to the exercise of their office duly ordained priests attached to the diocese of Scranton; that the plaintiff was duly ordained and attached to said diocese; that he could not exercise his office without being assigned as aforesaid; that he requested the defendant to assign him to duty so that he might thereby obtain a living by means of the emoluments, perquisites and revenues appertaining to the exercise of his office; that it was the duty of the defendant by the canons and customs of the church so to assign the plaintiff; that the defendant refused, and continued to refuse, to make an assignment. The plaintiff further averred that he had a legal right of property in the exercise of his office; that by the rules of his church he was prohibited from obtaining a living by any secular employment, and that by means of the emoluments, perquisites and revenues aforesaid, he could have obtained a large sum of money, viz., $2,200 yearly. The defendant demurred, assigning as grounds of demurrer: 1. That the *narr.* did not set out the

nature and character of the unincorporated association and the persons of whom it was composed, or the principles of ecclesiastical polity and church government maintained by it. 2. That it did not set out the customs and canons sufficiently to let the court judge whether the assignment of priests was a duty or a discretionary power of a bishop. 3. That it did not set out sufficiently the laws incapacitating the plaintiff from gaining a livelihood otherwise than as a priest. 4. That the averment of request was insufficient, not setting out the place or manner. 5. That it did not aver that the plaintiff possessed abilities and qualifications necessary for the office of priest in the diocese of Scranton. 6. That there was no allegation of a vacancy in a post of employment. 7. Because the canons and rules of the Roman Catholic Church are of force only in *foro conscientiæ*, and do not give rise to any such duty as can be adjudicated upon in a civil court.

R. P. White (with him John Campbell and William A. Porter), for demurrer, cited Tuigg *vs.* Sheehan, 5 Outerb. 368.

Mortimer Harris Brown and E. Hunn Hanson, *contra.* The duty from the defendant to the plaintiff arises out of their mutual status as members of a voluntary society governed by customs and canons. 1 Chitty on Pl. 392; Rider *vs.* Smith, 3 T. R. 766; Beiderman *vs.* Stone, L. R. 2 C. P. 504; Long *vs.* Moore P. C. N. S. 411.

Thayer, P. J.—The cause of action set forth in the plaintiff's declaration is certainly one of a very novel character. He alleges that he is a priest of the Roman Catholic Church attached to the diocese of Scranton ; that it was the duty of the defendant as the Roman Catholic bishop of that diocese, under the canons and customs of the church, "to assign the plaintiff to the exercise of his office of priest in said diocese ;" that the defendant refused so to assign him, by reason of which the plaintiff has been deprived of the means of "obtaining a large sum of money" to the plaintiff's damage of $4,400.

It is quite plain to us that no right of property and no civil rights are involved in the cause of action set up by the plaintiff in this declaration. The duty which it is alleged rested upon the bishop to assign the plaintiff to the exercise of priestly functions, if it existed at all, was clearly a religious duty only, not arising out of any contractual or civil relations between the parties. For its performance or non-performance the defendant was answerable only *in foro conscientiæ*, or to his ecclesiastical superiors. As the plaintiff himself states the case it was the exercise of a purely spiritual function, for he says it was a duty which belonged to him as bishop. It was plainly a matter in which he had a right as a bishop in the exercise of a purely ecclesiastical function, to use his official discretion. In the exercise of that discretion he

was answerable only to the laws of the church. If for the breach of merely religious duties a man may have an action at law, where is the civil control over the consciences of bishops and pastors of the church to end? May a man have an action at law against a minister for refusing to baptize him, or for debarring him from the communion? Or for refusing to ordain him? Was it ever heard of before that an action would lie against a bishop or other ecclesiastical authority for not assigning spiritual work to a priest? Could the Methodist conferences be sued for not assigning a minister to a charge? Or a Presbytery for not approving a ministerial call and refusing to install the minister? Is it contended by the plaintiff that he had a right to be employed by the bishop, and that his right to be employed was a right of property, of which the defendant has deprived him, and that for this deprivation he is entitled to maintain an action at law? Following the example of the learned judge who delivered the opinion of the supreme court in Tuigg *vs.* Sheehan, 5 Outerb. 369, let us test the soundness of this proposition by reversing the position of the parties. Suppose the bishop had assigned the plaintiff to the exercise of some priestly duty, and he had refused to perform it, could the bishop have sued him in a civil court and recovered damages for his refusal? Can anything be plainer than that he might not only renounce the duty, but renounce his orders, if he chose, without incurring any civil liability to any one therefor? Yet mutuality of obligation is the essence of all contracts. If he was not bound *civiliter* neither was the bishop bound. The relation between a Roman Catholic bishop and a priest of his diocese is not that of employer and employed, hirer and hired; and although by the canons of the church it may be bound to provide for its priests, and although that provision is usually made by the bishop appointing the priest to some spiritual function or duty, this does not constitute a civil obligation on the part of the bishop so to appoint him, nor impose any civil responsibility upon him whatever. The neglect of a merely religious or ecclesiastical duty cannot be made the subject of an action by persons who allege that they have been injured by such neglect. These we understand to be the principles of Tuigg *vs.* Sheehan, and without enlarging further upon the subject, we are of opinion that that case rules the present one. Where rights of property or any recognized civil rights are at stake the courts will inquire into and decide upon the proceedings of ecclesiastical bodies or officials, so that the things that are Cæsar's may be rendered to Cæsar, but in the present case we are of opinion that the facts set forth in the plaintiff's declaration do not show that Cæsar has any right to intermeddle.

Judgment for defendant on the demurrer.—*The Reporter.*